(No. 859—Claim denied.)

HELENA DOROTHEA BURGHARDT, ADMINISTRATRIX OF THE ESTATE OF ERNEST A. G. BURGHARDT, ALSO KNOWN AS GUSTAVE BURGHARDT, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 14, 1926.*

GOVERNMENTAL FUNCTION—*State not liable for injuries sustained by inmate of its institutions.* The State in conducting its State Hospital at Dunning exercises a governmental function and is not liable for injuries sustained by an inmate thereof.

BAMBERGER & NEUMER, for claimant.

OSCAR E. CARLSTROM, Attorney General; GEORGE C. DIXON, Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

This is a claim filed by Helena Dorothea Burghardt, Administratrix of the estate of Ernest A. G. Burghardt, deceased, for damages for the death of said deceased while an inmate of the Chicago State Hospital at Dunning, Chicago, Illinois.

Ernest A. G. Burghardt was a resident of Cook county, Illinois, and was declared insane by the county court of that

county on the 16th day of August, A. D. 1906, and by the order of said court committed to the Chicago State Hospital for the Insane at Dunning, Chicago, Illinois, and remained there as a patient until his death on December 26, 1923. At the time he was committed to the hospital he was an ornamental iron worker. On the 19th day of June, 1900, he was married to Helena Dorothea Burghardt and lived with her until committed to the hospital. One child, viz., Ernest Adam Gustave Burghardt, Jr., was the issue of this marriage, and he and the widow are the only heirs and next of kin of deceased.

The deceased was in a demented condition for about three months before being committed to the hospital, and he was committed on a petition filed by Gustave Nowak, his brother-in-law. After his commitment to the hospital his mental condition gradually grew worse, though his physical condition remained fairly good up to October, 1917. He suffered from a form of mental disease known as general paralysis of the insane, commonly called paresis, and for more than seven months before his death he was also in poor physical condition. On account of his weakened physical condition he was transferred to the dining room, a one story building, so that he would not have to go out to his meals and would not have far to go out for exercise in the summertime. Just prior to his death he was in a very poor mental and physical condition, getting quite feeble and gradually declining with no hope of ever being any better. He was about 58 or 59 years old at the time of his death.

On December 26, 1923, about 5:30 in the evening, while the deceased and other inmates of the hospital were eating supper in the dining room, a fire broke out in the closet in the building called Annex 5 of the hospital. At the time the wind was very high from the west, and the fire destroyed Annexes 5, 4, 3, 2, and the dining room in which deceased and a number of other inmates lost their lives. The origin of the fire was undetermined. The employees and attendants at the hospital did all that was humanly possible for them to do to save the inmates.

The dining room in which deceased lost his life was a one story building equipped with one door opening to the yard and a double door opening into a hall which in turn opened into the yard. This dining room was built mostly of glass, consisting of windows and doors, on the order of a greenhouse, and was originally built for tubercular patients, but

owing to the crowded condition of the hospital was being used at the time of the fire as a dining room.

There is no evidence that this building was constructed contrary to any ordinance of the city or statute of this State, and at the time of the fire it was in as good condition as when originally built.

The evidence in this case shows deceased was incurably insane and that because of his mental condition he would never have been able to contribute any support to his wife, but on the contrary he would have been a burden and a charge to her had he been released from the hospital.

The State has filed a general and special demurrer to the declaration, setting up that the doctrine of respondeat superior is not applicable to the State; that in the absence of statute the State is not liable for the torts of its officers, agents or employees; that the State in conducting the Chicago State Hospital at Chicago, Illinois, exercises a governmental function and is not liable for injuries to those in attendance upon said institution or to those in its employ.

In our view of this case, it is not necessary to discuss the evidence in detail. This court has repeatedly held that the rule of respondeat superior is not applicable to the State. (*Ryan* v. *State,* 4 Ill. C. C. 57; *Schroeder* v. *State,* 3 Ill. C. C. 36.) This court has also held that the State in conducting its charitable institutions is exercising a governmental function and is not liable for damages to the inmates. (*Schwab* v. *State,* 4 Ill. C. C. 77; *Van Meter* v. *State,* 4 Ill. C. C. 325).

We are therefore of the opinion that the State is not liable in this case and that the demurrer to the declaration should be sustained. The claim is therefore rejected.